## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RASHARD A. EVANS,

       Petitioner,

v.                                                          Case No. 3:17-cv-897-J-32JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## **ORDER**

### I.   **Status**

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Doc. 1; Petition. He is challenging a state court (Duval County, Florida) judgment of conviction for manslaughter (count one) and grand theft auto (count six).[1] Id. at

---

[1] The original Indictment contained six counts related to both Petitioner and his co-defendant: (1) first degree murder of Monquell Wimberly (Petitioner and co-defendant), (2) first degree murder of Patrick Stafford (Petitioner and co-defendant); (3) armed robbery (Petitioner and co-defendant); (4) possession of a firearm by a convicted felon (Petitioner); (5) possession of a firearm by a convicted felon (co-defendant); and (6) grand theft auto (Petitioner and co-defendant). Petitioner and his co-defendant has separate trials. The jury found Petitioner not guilty of counts two and three, and the state nolle prosequi count four.

1. He was adjudicated as a habitual felony offender and is currently serving a twenty-year term of incarceration on count one and a consecutive seven-year term on count six. Id. at 7. Respondents have responded. See Doc. 16; Response.[2] Petitioner replied. Doc. 30. This case is ripe for review.

## II.   <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter,

---

[2] Attached to the Response are numerous exhibits. See Doc. 16-1 through Doc. 16-26. The Court cites to the exhibits as "Resp. Ex."

562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is

unaccompanied by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that
> does provide a relevant rationale. It should then
> presume that the unexplained decision adopted the
> same reasoning. But the State may rebut the
> presumption by showing that the unexplained
> affirmance relied or most likely did rely on different
> grounds than the lower state court's decision, such as
> alternative grounds for affirmance that were briefed or
> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could

> disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the

4

outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v.</u>

Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   Analysis

### A. Ground One

Petitioner contends his trial counsel was ineffective for failing to object to the admission of other bad or wrongful acts, depriving Petitioner of his due process rights. Doc. 1 at 4. Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. T at 3-5. The trial court conducted an evidentiary hearing on this claim, during which Francis Jerome Shea, Esquire, appeared on behalf of Petitioner; and Petitioner's trial counsel, Richard Kuritz, Esquire, and James Hernandez, Esquire, as well as Petitioner testified. Resp. Ex. V at 68-167. Following the evidentiary hearing, the trial court denied the claim as follows:

> Defendant alleges counsel was ineffective for failing to object to the admission of other bad acts or wrongs. Specifically, Defendant contends that when the State played a recorded interview between Defendant and Detective Bowers, it played a portion when Defendant admitted to smoking marijuana. Defendant maintains that by allowing the jury to hear he used

6

drugs, he appeared to have bad character, the propensity to commit the crime, or more likely to have committed the crime. Thus, the jury returned a guilty verdict.

At the evidentiary hearing, Defendant's trial counsel, Mr. Kuritz, testified. Mr. Kuritz is an experienced defense attorney with approximately twenty-two years of experience. Mr. Kuritz testified he did not have the comment about marijuana redacted as a part of his overall trial strategy. Defendant changed his story throughout the interview, and his comments did not match the physical evidence in the case. Mr. Kuritz felt the comment about smoking marijuana allowed counsel the opportunity to explain the inconsistencies in his story by arguing Defendant was high on drugs. Mr. Kuritz believed it was important to have this explanation for the inconsistent stories because he did not want to lose credibility with the jury. Mr. Kuritz further testified he reviewed the exhibits with Defendant prior to trial, and Defendant agreed with the defense strategy Mr. Kuritz prepared. Moreover, Mr. Kuritz stated he had many prejudicial comments redacted from the video, including comments about Defendant's gang affiliations and prior record.

The Court finds the testimony of Mr. Kuritz to be credible. See Foster [v. State, 929 So. 2d 524, 537 (Fla. 2006)]. It is clear from Mr. Kuritz's testimony that his decision to leave the comment unredacted played an important part in his trial strategy. Moreover, it appears the defense strategy at trial was successful, as Defendant faced the death penalty for first degree murder, but was ultimately convicted of a lesser included offense. (Exs. A, D.) As such, Mr. Kuritz cannot be held ineffective pursuant to Strickland. Accordingly, Defendant is not entitled to relief.

Resp. Ex. V at 194-95. The First District Court of Appeal per curiam affirmed

the trial court's denial without a written opinion. Resp. Ex. Z. Assuming the

First DCA addressed this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Whether an attorney's actions stemmed from a strategic decision is an issue of fact, and the state court's decision on that issue is presumptively correct. Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998); see also Chandler v. United States, 218 F.3d 1305, 1314, n.14 (11th Cir. 2000) ("[A] court must not second-guess counsel's strategy."). Having chosen a reasonable defense strategy, Petitioner's counsel was not ineffective for not objecting to this evidence, especially when he was using the evidence to attempt to explain Petitioner's inconsistent statements to police. Further, at the evidentiary hearing, Mr. Kurtiz testified that he and Petitioner agreed on their trial strategy, which Mr. Kurtiz considered a "success" since it led to "a not guilty on one of the murders and unarmed manslaughter on the second [first degree murder charge], and there were two PFCF that went away due to the verdict of the unarmed manslaughter." Id. at 287. He believed this result was especially successful considering Petitioner's co-defendant was convicted of first degree murder and sentenced to the death penalty. Id.

Given the attorney's testimony at the evidentiary hearing, the Court finds the state court's adjudication of this Strickland claim is neither contrary to nor an unreasonable application of clearly established federal law. Also, the state

8

court's decision did not rely on an unreasonable determination of the facts given the evidence presented in the state court proceeding. As such, Ground One is due to be denied.

## B. Ground Two

Petitioner argues his trial counsel was ineffective for failing to object to the incomplete jury instructions that failed to define justifiable and excusable homicide. Doc. 1 at 6. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. T at 5-7. The trial court summarily denied this claim, finding in pertinent part:

> Defendant contends counsel was ineffective for failing to object to incomplete jury instructions, depriving him of "due process, effective assistance, and a fair trial." Specifically, Defendant contends the trial court never defined justifiable homicide or excusable homicide when it read the instruction for first degree murder.
>
> The Court finds this claim meritless. While reading the jury instructions, the trial court did read the definitions of justifiable homicide or excusable homicide. (Ex. E at 1029-31.) Moreover, the trial court provided those same definitions to the jury in the written jury instructions. (Ex. F.) As such, counsel was not ineffective for [not] making a meritless objection. See Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010) (holding counsel cannot be deemed ineffective for failing to make a meritless objection). Accordingly, Defendant is not entitled to relief.

Resp. Ex. V at 195-96. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. Z. To the extent the First DCA

addressed this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

In applying such deference, the Court notes Respondents' argument that at the beginning of the instruction on homicide, the trial court correctly defined justifiable homicide and excusable homicide, Resp. Ex. N at 1030-31; and that the written instructions also contained these definitions, Resp. Ex. E at 902. In his Reply, Petitioner states he "respectfully concedes with the [Respondents'] response where both definitions were read when instructed in the First Degree Murder counts." Reply at 3. As such, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Two is due to be denied.

**C. Ground Three**

Petitioner asserts his trial counsel was ineffective for failing to request the trial court to instruct the jury on any necessary lesser included offense for grand theft auto. Doc. 1 at 8. According to Petitioner, failure to instruct on all lesser included offenses prevents the jury from using its "pardon power." <u>Id.</u> He argues that but for counsel's failure, he would have been found guilty of the lesser offense. <u>Id.</u>

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. T at 7-9.

The trial court summarily denied the claim as follows:

> In the instant Motion, Defendant alleges trial counsel was ineffective for failing to request any lesser included offenses for Grand Theft Auto. Specifically, Defendant asserts that had the jury been read the "'one step' down lesser to grand theft auto,'" he would have been found guilty of the lesser included offense.

> As stated above, a defendant must demonstrate both ineffectiveness and prejudice to state a sufficient claim for relief. Strickland, 466 U.S. at 687; Stephens v. State, 748 So. 2d 1028, 1033 (Fla. 1999). To prove that counsel's deficient performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Supreme Court of Florida has held,

> > [a]ny finding of prejudice resulting from defense counsel's failure to request an instruction on lesser-included offenses necessarily would be based on a faulty premise: that a reasonable probability exists that, if given the choice, a jury would violate its oath, disregard the law, and ignore the trial court's instructions. As did the district court in Sanders, we, too, have difficulty accepting the proposition that there is even a substantial possibility that a jury which has found every element of an offense proved beyond a reasonable doubt, would have, given the opportunity, ignored its own findings of fact and the trial court's instruction on the law and found a defendant guilty of only a lesser included offense.

11

> Sanders v. State, 946 So. 2d 953, 959-60 (Fla. 2006) (citation omitted). The possibility of a jury pardon cannot form the basis for a finding of prejudice and, therefore, a claim alleging ineffective assistance of counsel for failure to request an instruction on a lesser included offense may be summarily denied. Id. at 960; James v. State, 973 So. 2d 528, 529 (Fla. 1st DCA 2007); Freeman v. State, 943 So. 2d 903, 904 n.1 (Fla. 5th DCA 2006).
>
> Even assuming arguendo that counsel was deficient in this case, Defendant's allegations as to prejudice in the instant Motion fall short, given that the jury found him guilty of the greater offense, Grand Theft Auto. (Ex. A.) Defendant has failed to meet his burden under Strickland and is, therefore, not entitled to relief as to this Ground. See Sanders, 946 So. 2d at 960.

Resp. Ex. V at 196-97. The First DCA per curiam affirmed the trial court denial without a written opinion. Resp. Ex. Z.

To the extent that the First DCA affirmed the denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. As the state court recognized, "[t]he possibility of a jury pardon cannot form the basis for a finding of prejudice under Strickland." Sanders, 946 So. 2d at 960; see also Bell v. McNeil, 353 F. App'x 281, 286 (11th Cir. 2009). Here, the jury found beyond a reasonable doubt that the evidence established every element of Grant Theft Auto. Resp. Ex. E at 898. The Court cannot now find that the same jury would have ignored its own findings of fact, disregarded the trial court's instruction on the law, and

found Petitioner guilty of such lesser included offenses instead. <u>See</u> <u>Sanders</u>, 946 So. 2d at 960. Thus, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Three is due to be denied.

### D. Ground Four

Petitioner argues trial counsel was ineffective for failing to call an alibi witness during trial. Doc. 1 at 10. He contends that Douglas Singletary was willing and available to testify that Petitioner "had been dropped off at his residence at the time of the second murder. . . ." <u>Id.</u> Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. T at 9-11. The trial court denied the claim as follows:

> Defendant alleges counsel was ineffective for failing to call a witness, Douglas Singletary, who would have provided an alibi for Defendant. Defendant maintains this witness was willing and ready to testify on Defendant's behalf, and Defendant was prejudiced by counsel's failure to call him as a witness.
>
> An ineffective assistance claim for failure to call a witness to testify at trial must be distinguished from an ineffective assistance claim for failure to reasonably investigate and locate witnesses. Unlike the strategic decision to call a witness to testify at trial, the failure to reasonably investigate and locate witnesses can

often serve as a colorable claim of ineffective assistance of counsel. Wiggins v. Smith, 539 U.S. 510, 521 (2003) (observing "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (quoting Strickland, 466 U.S. at 690-91)). "However, if a reasonable investigation has been conducted, subsequent decisions based on that investigation (such as the decision not to call a particular witness at trial) are presumed to be reasonable and strategic and are 'virtually unchallengeable.'" Mendoza v. State, 81 So. 3d 579, 581 (Fla. 3d DCA 2012) (quoting Strickland, 466 U.S. at 690). "A defendant can rebut this presumption only by establishing that 'no competent counsel' would have made the same decision." Id. (citation omitted).

Moreover, it is well-settled in Florida that a defendant may not seek to go behind his sworn testimony at a hearing in a motion seeking postconviction relief. Stano v. State, 520 So. 2d 278, 280 (Fla. 1988); Bir v. State, 493 So. 2d 55, 56 (Fla. 1st DCA 1986); Iacono v. State, 930 So. 2d 829, 831 (Fla. 4th DCA 2006). Any allegations which contradict those answers will not be entertained by the court. Johnson v. State, 22 So. 3d 840, 844, 845 (Fla. 1st DCA 2009).

Prior to trial, counsel listed Douglas Singletary as a potential witness in "Defendant's Third Disclosure to State" and "Defense Witness List," both filed on January 23, 2012. (Ex. G.) At trial, the trial court held the following colloquy with Defendant:

> THE COURT: Do you understand that you also have the right to have your attorneys call witnesses on your behalf?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And you may want to do that; you may not want to do that. Again,

14

> it's your decision. Even if your attorneys
> don't want to, you can ask them to call
> witnesses. Do you understand, sir?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: All right. Will there be any
> witnesses called for your side?
>
> DEFENDANT: No, sir.
>
> THE COURT: All right. And is that your
> independent decision, sir?
>
> DEFENDANT: Yes, sir.

(Ex. E at 876-79.) Moreover, after the trial court's colloquy with Defendant, counsel stated he and co-counsel debated calling one witness, but ultimately decided to forgo the presentation of that witness as a strategic decision. (Ex. E at 878.) Counsel stated, however, that if Defendant really wanted, he would consider calling the witnesses. (Ex. E at 878.) Defendant stated he did not wish to call witnesses. (Ex. E at 879.) Based on the above, Defendant is not entitled to relief. See Johnson, 22 So. 3d at 844, 845.

Notably, the Court did not grant an evidentiary hearing on this Ground. The parties, however, briefly discussed the allegations contained herein at the evidentiary hearing, and both Mr. Kuritz and Mr. Hernandez answered a few brief questions about the allegations. Mr. Kuritz testified Defendant gave him the name of Douglas Singletary, a potential alibi witness. Mr. Kuritz testified he gave this information to his investigator so the defense could gather more information for an alibi. According to Mr. Kuritz, Mr. Singletary could not provide an affirmative alibi for Defendant. Moreover, Mr. Kuritz stated that even with the alibi witness, there was physical evidence placing Defendant at the scene, including a fingerprint on the

> car. Mr. Hernandez's testimony corroborated Mr. Kuritz. Mr. Hernandez stated the alibi witness was very uncooperative and the witness was unsure of the timeframe. Mr. Hernandez testified he felt the "worst thing" the defense could have done at this trial was to put Mr. Singletary, a family member of Defendant, on the stand with an insufficient alibi.

Resp. Ex. V at 197-99. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. Z. To the extent that the First DCA affirmed the denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Counsel's decision to not call Singletary as a witness was both strategic and objectively reasonable. At the evidentiary hearing, Mr. Kurtiz explained that before trial, his private investigator tried to locate Mr. Singletary and noted he was hard to contact. Resp. Ex. V at 295. According to Mr. Kurtiz, once they located him, the investigator and Mr. Hernandez spoke with Singletary and determined "there was no way he could demonstrate an alibi affirmatively"; notably, "he never ever said that [Petitioner] was with him." Id. at 296. Mr. Hernandez testified that he was aware of the facts of Petitioner's case including eyewitness evidence of Petitioner with the co-defendant only blocks away from the location of the second homicide. Id. at 327-28. As such, he believed presenting an uncorroborated alibi witness would have been the fastest way to lose credibility with the jury. Id. at 328. Considering this testimony, the state

court's decision that counsel's strategy was reasonably sound was neither contrary to, nor an unreasonable application of <u>Strickland</u>. Further, the state court's finding of fact was not unreasonable given the evidence presented in the state court proceeding. Ground Four is due to be denied.

### E. Ground Five

Petitioner asserts his trial counsel was ineffective for advising Petitioner to proceed to trial on all counts at once, arguing counsel should have severed the counts and prevented the presentation of prejudicial collateral crime evidence. Doc. 1 at 12. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. T at 12-15. The trial court summarily denied this claim as follows:

> Defendant alleges counsel erroneously advised Defendant to proceed to trial on all charges at once, instead of having the offenses severed for trial. Defendant contends the offenses were not related or so similar as to require the charges be tried together. Defendant further contends he was prejudiced by this error because the jury saw Defendant as more violent and more likely to have committed the crimes.

> Florida Rule of Criminal Procedure 3.152 allows a motion for severance, even if the offenses were not improperly joined, if appropriate to promote a fair determination of guilt or innocence. Fla. R. Crim. P. 3.152; <u>Johnson v. State</u>, 14 So. 3d 1282, 1283 (Fla. 2d DCA 2009).

> At a pretrial hearing held on January 19, 2012, Defendant appeared before the trial court with trial counsel.[3] Mr. Kuritz stated on the record that Defendant filed a motion requesting a <u>Nelson [v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973),] inquiry. (Ex. H at

17

8.) Mr. Kuritz informed the trial court of the reasons for Defendant's request for a <u>Nelson</u> inquiry, and told the trial court he discussed severing the pending charges with Defendant. Mr. Kuritz stated to the trial court he discussed it with co-counsel for months, and even discussed severance with the State. (Ex. H at 8-9.) Mr. Kuritz stated he and his co-counsel discussed the legal basis for severing the offenses with Defendant and informed him that, in their professional opinion, they did not want to sever the offenses. (Ex. H at 9-10.) The trial court inquired if Defendant agreed with the trial strategy chosen by counsel, to which Defendant responded "[y]es, sir." (Ex. H at 10.) Thus, the record refutes Defendant's contention that counsel was deficient for erroneously advising him to proceed to trial on all charges. <u>See</u> <u>Johnson</u>, 22 So. 3d at 844, 845.

Assuming <u>arguendo</u> that counsel was deficient, the Court finds that no prejudice occurred. The trial court instructed the jury that although the crimes were tried together, the evidence and verdict for each offense were separate. (Ex. E at 1080-81.) Thus, the Court finds Defendant is not entitled to relief.

[FN 3: Jury selection commenced on January 23, 2012.]

Resp. Ex. V at 199-201. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. Z. To the extent that the First DCA affirmed the denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Petitioner proceeded to trial on four counts for offenses that allegedly occurred on the same day – July 20, 2008. Resp. Ex. A at 45-46. As the state court aptly noted, before trial, trial counsel informed the court that Petitioner

asked counsel to file a motion to sever the counts. Resp. Ex. V at 243. Trial counsel advised that he drafted such motion, but asked Petitioner to think about his request because both defense attorneys believed, in their professional opinions, that severing the counts would not help Petitioner's case and that all the counts should be tried together. Id. The trial court then asked Petitioner if he agreed with trial counsel's strategy and decision, to which he replied he did agree. Id. at 244. Further as noted above, Mr. Kurtiz believed their trial strategy to be a success – the jury found Petitioner not guilty of one first degree murder charge and the armed robbery count; and guilty of the lesser included offense of manslaughter for the second first degree murder charge with a special finding that Petitioner did not use or attempt to use a firearm, causing the state to dismiss the possession of a firearm by a convicted felon charge. Resp. Ex. E at 892-98. Because counsel's decision to not file a motion to sever was both strategic and objectively reasonable, the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of Strickland. Further, the state court's finding of fact was not unreasonable given the evidence presented in the state court proceeding. Ground Five is due to be denied.

### F. Ground Six

Petitioner asserts his trial attorney was ineffective for failing to have Petitioner undergo a competency evaluation. Doc. 1 at 14. According to Petitioner, trial counsel knew that Petitioner had an "extensive mental health

history"; was "diagnosed with mental illness ADHD at age 13"; and was diagnosed with depression and anxiety. He asserts trial counsel was aware of Petitioner's mental health status and inability to assist in his defense or appreciate the charges against him but failed to have Petitioner evaluated. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. T at 15-17. After conducting an evidentiary hearing on this claim, the trial court denied this ground, finding the following:

> Defendant contends counsel was ineffective for failing to have Defendant evaluated for competency. Defendant alleges that prior to trial, counsel learned Defendant had an extensive mental health history. Defendant maintains counsel was aware of Defendant's inability to assist counsel in his defense, as well as Defendant's inability to comprehend trial proceedings and appreciate the pending charges.

> At the evidentiary hearing, Mr. Kuritz and Mr. Hernandez both explained through their testimony that the State sought the death penalty in Defendant's case. As such, they prepared for Defendant's case as a death case. Mr. Hernandez testified to the Court that for any death case, seeking a mental health and competency evaluation are important for guilt and penalty phases. Both Mr. Kuritz and Mr. Hernandez testified, however, that they did not have any competency concerns through their representation of Defendant. Instead, they filed the request as a precaution because the death penalty was a possible penalty in this case.

> Mr. Kuritz testified Defendant was bright, could appreciate the range of punishment in the case, the facts of the case, and would engage in conversations about serious issues during the case. Mr. Kuritz further

20

testified he saw no "red flags," as Defendant always exhibited appropriate courtroom behavior, understood the adversarial nature of the criminal justice system, and the seriousness of his case. Mr. Hernandez saw no indication Defendant was incompetent, as Defendant understood the criminal justice system, the roles of each party in the courtroom, and the pending charges against him. Mr. Hernandez testified Dr. Bloomfield did evaluate Defendant for competency, but did not include his findings in the report, as counsel did not think it was necessary.

The Court finds the testimony of Mr. Kuritz and Mr. Hernandez to be credible. See Foster, 929 So. 2d at 537. It is clear from the testimony of trial counsel that Defendant was competent throughout the proceedings. Because the death penalty was a potential punishment in this case, counsel filed an ex-parte motion seeking a mental health evaluation for competency. (Ex. I at 430-31.) The trial court entered an Order granting counsel's motion on the same day. (Ex. J at 428-29.) Trial counsel retained Dr. Bloomfield who found Defendant competent. As such, Mr. Kuritz and Mr. Hernandez cannot be held ineffective pursuant to Strickland. Accordingly, Defendant is not entitled to relief.

Resp. Ex. V at 201-02. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. Z. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

During the evidentiary hearing, Mr. Kurtiz testified that he represented Petitioner for about two years, and during that time, he spoke and met with Petitioner often. Resp. Ex. V at 285-86. He explained that Petitioner is "very

bright" and understood the state's charges, actively participated in their discussions about plea negotiations, understood his co-defendants' proceedings, and could communicate the facts of his case to help with his defense. Id. at 286. Mr. Kurtiz explained that because the state was seeking the death penalty, he had Petitioner undergo a competency evaluation with Dr. Bloomfield, and that when he reviewed Dr. Bloomfield's report, he did not "remember anything jumping out as being significantly different than what [he] normally see[s]" with those evaluations. Id. at 291. According to Mr. Kurtiz, the report showed that Petitioner's combined IQ and achievement scores fell into the average range of intellectual functioning. Id. at 292. He explained "competency was never an issue with [Petitioner]. He's very bright, very articulate, great manners. [They] got along well and never had any suggestion that he would not be competent." Id. at 292.

Counsel's decision to not subject Petitioner to further competency evaluations was objectively reasonable. Thus, the state's adjudication of this claim was neither contrary to, nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Six is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[3]

---

[3] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of October, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Rashard Antwan Evans, #J46561
      Thomas H. Duffy, Esq.